In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3660

GENERAL PARKER,

*Plaintiff-Appellant,*

*v.*

KEVIN LYONS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 11-1441 — **Joe Billy McDade**, *Judge.*

SUBMITTED JUNE 27, 2014[*] — DECIDED JULY 7, 2014

Before WOOD, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges.*

PER CURIAM. An Illinois statute bars persons convicted of certain crimes from holding public office. See 10 ILCS § 5/29-15. General Parker sought to run for a seat on the school

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

board of Peoria School District 150. The state's attorney for Peoria County filed suit in state court to bar Parker, who had been convicted of felony theft in the 1980s, from pursuing that office. After a brief hearing held on short notice, a state court ordered Parker's name removed from the ballot and enjoined him from running. Parker then sued several defendants in federal court, including the state's attorney. He argued that they enforced the statute in violation of due process and equal protection by denying him a chance to defend himself and targeting him based on his race (African American). He also attacked the constitutionality of the law on its face. The district court dismissed the suit as barred by the *Rooker-Feldman* doctrine, immunity, and claim preclusion. We conclude that immunity, not *Rooker-Feldman,* bars the enforcement claims and that, even if claim preclusion did not preclude Parker's facial attack on the statute, that challenge fails on the merits. We therefore affirm the judgment.

For purposes of this appeal, we take as true the factual allegations in Parker's complaint. Seeking a seat on his local school board, in December 2010 Parker filed a nominating petition for the seat and a statement asserting that he was eligible to hold the office. See 105 ILCS §§ 5/9-1, 5/9-10; 10 ILCS § 5/10-5. Two months later—about a week before the ballots were to be printed for the April 5 election—Kevin Lyons, the state's attorney for Peoria County, filed a *quo warranto* complaint in Illinois circuit court to block Parker's candidacy. The purpose of a *quo warranto* action generally "is to question whether a person lawfully holds title to office." *McCready v. Ill. Sec'y of State*, 888 N.E.2d 702, 712 (Ill. App. Ct. 2008); 735 ILCS § 5/18-101.

Lyons asserted in the complaint that Parker was barred by statute from holding the office of school board member because he was convicted in the early 1980s of felony theft. The statute in question prohibits "[a]ny person convicted of an infamous crime … from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law." 10 ILCS § 5/29-15. Felony theft is an "infamous crime" under the statute, see *People ex rel. City of Kankakee v. Morris*, 467 N.E.2d 589 (Ill. App. Ct. 1984), and Parker never received a pardon for his conviction. (The statute does not bar persons convicted of felonies from all elective office; those who complete their criminal sentence may run for and hold any office created by the Illinois Constitution. See 730 ILCS § 5/5-5-5(b); *Buchmeier v. United States*, 581 F.3d 561, 564 (7th Cir. 2009); *People v. Hofer*, 843 N.E.2d 460, 464–65 (Ill. App. Ct. 2006).) Lyons requested a declaration that Parker was not eligible to hold office on the school board and an injunction barring his name from appearing on the ballot.

On the first day of the *quo warranto* proceedings, of which he had less than a day's notice, Parker argued that the presiding judge, Judge Brandt, was biased and requested 48 hours to file a recusal motion. The judge gave him one day. On the second day, Judge Brandt granted Parker's request to substitute a judge as a matter of right. See 735 ILCS § 5/2-1001(a)(2). Minutes later, the hearing continued before a different judge, Judge Shore. Proceeding without counsel and having had less than two days to research and present his case, Parker moved to dismiss, challenging the propriety of the suit. The judge denied the motion. Parker then defended the suit on three

grounds: the statute barring those convicted of infamous crimes from holding public office does not apply to the office of school board member, the state's attorney was selectively enforcing the statute, and the rushed hearings were unjust.

At the end of the hearing, the state court rejected Parker's arguments. Judge Shore ordered that Parker was "barred from holding or running for [the office of] school board member," enjoined him from running in the upcoming election, and ordered his name removed from the ballot. Parker appealed, repeating the arguments he had made in circuit court and challenging for the first time the statute's constitutionality. The appellate court affirmed the circuit court's judgment and concluded that the constitutional arguments Parker had not raised in circuit court were forfeited. In the meantime, the election was held without Parker's name on the ballot, and another candidate, Debbie Wolfmeyer, who is white, was elected to the school board.

While Parker's appeal in state court was pending, he filed this suit in federal court against Lyons (who, Parker acknowledges, is no longer a state's attorney), Peoria County, and other defendants. Through several amendments to his complaint, Parker brings two types of claims. The first is a claim that the defendants improperly enforced the statute in the *quo warranto* proceeding. He argues that, in violation of due process, the defendants "orchestrated the *quo warranto* action in a manner which was designed to deprive [Parker] of a fair hearing" by "arrang[ing] for the case to be heard by [Lyons's] good friend Judge Brandt" and providing Parker "with wholly inadequate notice." Parker adds that, for several reasons (including racial bias), the enforcement against him violated equal protection.

His second claim is a facial attack. He argues that the Illinois statute on its face violates his "implied right to run for public office," a right that he says is guaranteed under the Constitution.

The district court dismissed all claims. First, on his claims that the defendants improperly enforced the statute, the court ruled that *Rooker-Feldman* barred the due-process theory and that the equal-protection theory failed on a number of grounds: Lyons enjoyed prosecutorial discretion and immunity; Peoria County was not a municipality liable for Lyons's actions because state's attorneys are officials of the state, not the county; and the other defendants were either not state actors or were immune. Second, the court decided that claim preclusion barred Lyons's facial constitutional challenges to the Illinois statute because Parker could have raised his constitutional arguments in the *quo warranto* proceedings and did not do so.

On appeal, Parker first challenges the district court's application of the *Rooker-Feldman* doctrine. We conclude that *Rooker-Feldman* does not apply here for two reasons. First, that doctrine divests district courts of jurisdiction only in cases where "the losing party in state court filed suit in federal court *after* the state proceedings ended." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (emphasis added). Parker sued in federal court while his appeal from the state circuit court's judgment was pending in Illinois Appellate Court. Since *Saudi Basic Industries*, all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed. See *Nicholson v. Shafe*, 558 F.3d 1266, 1279

(11th Cir. 2009); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 n.2 (10th Cir. 2006); *Dornheim v. Sholes*, 430 F.3d 919, 923–24 (8th Cir. 2005); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005); *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 25 (1st Cir. 2005). As the Ninth Circuit explained, *Saudi Basic Industries* clarified that "[p]roceedings end for *Rooker-Feldman* purposes when the state courts *finally resolve* the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Mothershed*, 410 F.3d at 604 n.1 (emphasis added). It added that if the state-court appeal is pending at the time the federal action is filed, the necessary final resolution in the state system is not present. We agree with this reasoning and conclude that *Rooker-Feldman* does not bar the claims of federal-court plaintiffs who, like Parker, file a federal suit when a state-court appeal is pending.

In the present case, there is a second reason why *Rooker-Feldman* does not apply. Parker alleges that Lyons (the only defendant about whom Parker develops an argument on appeal) vitiated the state-court process by collaborating with a friendly judge to rush the case to a foreordained judgment. Because his claims are premised on detailed allegations that the winning party obtained a favorable civil judgment by corrupting the state judicial process, *Rooker-Feldman* does not bar them. See *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014); *Loubser v. Thacker*, 440 F.3d 439, 441–42 (7th Cir. 2006); *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995).

Though they are not foreclosed by *Rooker-Feldman*, Parker's claims that Lyons improperly enforced the statute nonetheless fail. To the extent that Parker is suing Lyons in his official

capacity as a state officer, damages are barred by the Eleventh Amendment. See *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 342 (7th Cir. 2010); *Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). And to the extent that he is suing Lyons in his individual capacity, damages are barred by absolute prosecutorial immunity. See *Fields v. Wharrie*, 672 F.3d 505, 516 (7th Cir. 2012); *Thomas v. City of Peoria*, 580 F.3d 633, 638–39 (7th Cir. 2009). Finally, injunctive relief against Lyons is unavailable. Parker contends that Lyons must be enjoined from using his "racial bias" to enforce the statute against blacks. But Lyons is no longer a state's attorney, and Parker alleges no racially biased enforcement by anyone else. Thus he may not obtain an injunction against Lyons.

This brings us to Parker's argument that the Illinois statute is unconstitutional on its face. He contends that the district court erroneously used claim preclusion to bar these challenges. The district court was required to apply Illinois's law of claim preclusion. See 28 U.S.C. § 1738. But as Parker points out, in Illinois claim preclusion "is an equitable doctrine that is not applied when it is 'fundamentally unfair to do so.'" *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1001 (7th Cir. 2007); *cf. Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 400–01 (1981) (no equitable exception under federal law of claim preclusion for antitrust defendants there). The defendants acknowledge that Parker had only two days to defend himself in state court, and Parker asserts that on such short notice he could not obtain counsel or develop his constitutional claims. We need not decide whether Illinois would recognize an equitable exception to claim preclusion in these circumstances. Even if it did, Parker's challenges fail on the merits.

Parker argues that future prosecutions against him under this statute should be enjoined under *Ex parte Young*, 209 U.S. 123 (1908). He appears to believe that *Young* allows him to proceed against the State of Illinois. But the current state's attorney, not the state itself, is the proper defendant under *Young*, which "permit[s] private citizens to sue state *officials* in their official capacities to require them to comply with federal law on an ongoing basis." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013) (emphasis added). The problem here is that no injunction based on *Young* is possible for the simple reason that Parker has not stated a claim that the state statute violates federal law. See *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Contrary to Parker's contentions, the statute does not violate equal protection. The right to run for or hold public office is not a fundamental right, *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 792–93 (7th Cir. 1995), and felons are not a suspect class, *Talley v. Lane*, 13 F.3d 1031, 1034 (7th Cir. 1994); thus, a ban on felons running for elective office is valid if it is rationally related to a legitimate state interest. See *Clements v. Fashing*, 457 U.S. 957, 963 (1982). Illinois's stated interest in barring felons from elective office is to ensure "public confidence in the honesty and integrity of those serving in state and local offices." *People v. Hofer*, 843 N.E.2d 460, 464 (Ill. App. Ct. 2006). Parker does not dispute the legitimacy of this interest, nor has he argued that the statute does not rationally further it. Moreover, even if a higher level of scrutiny applied to restrictions on the right of ex-felons to hold office, the claim would fail. The Supreme Court has held that states may deprive convicted felons of the right to vote—a right that, unlike

Parker's interest in running for office, *is* fundamental and subject to strict scrutiny. *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); see *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 210 (2008) (voting is a fundamental right). Parker responds that the statute violates equal protection because it has a disparate impact on black men. But an assertion of disparate racial impact does not state an equal-protection claim. Parker must allege that the legislature acted with a discriminatory purpose, and he does not do so. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Washington v. Davis*, 426 U.S. 229, 240 (1976).

Likewise, Parker has not persuaded us that the ban violates the First Amendment. To succeed, he must demonstrate that the state's legitimate interest in the integrity of its elections does not justify its ballot restriction. See *Stone v. Bd. of Election Comm'rs for the City of Chi.*, 750 F.3d 678, 681 (7th Cir. 2014); *Brazil-Breashears*, 53 F.3d at 792. Parker asserts broadly that "speech or expression is entitled to constitutional protection" but that rhetoric does not identify an insufficiency in the state's legitimate interest in keeping those convicted of serious crimes off the ballot. Although a ballot disqualification based on a 30-year-old felony conviction may be harsh, Parker gives us no reason to conclude that the state is not entitled to adopt this rule. Moreover, if Parker believes that his special circumstances warrant it, he remains free to seek an executive pardon so that he may run for school board. See 10 ILCS § 5/29-15; *Delgado v. Bd. of Election Comm'rs of the City of Chi.*, 865 N.E.2d 183, 185 (Ill. 2007).

We have considered Parker's other arguments and conclude that they lack merit.

AFFIRMED.