**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4541
_____

BOBBY JOHNSON, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED;
EDWIN AGUAIZA, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,
                                        Appellants

v.

DRAEGER SAFETY DIAGNOSTICS, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-13-cv-02439)
District Judge:  Honorable Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2014
_____

Before: SMITH, HARDIMAN and BARRY, <u>Circuit Judges</u>

(Filed: December 9, 2014)
_____

OPINION[*]
_____

BARRY, <u>Circuit Judge</u>

---

[*]This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Bobby Johnson and Edwin Aguaiza appeal from the order of the District Court dismissing their complaint against Draeger Safety Diagnostics, Inc. based on the Rooker-Feldman doctrine. We will affirm, though for reasons that differ in part from those of the Court.

I.

Plaintiffs Johnson and Aguaiza, New Jersey residents, were arrested for suspected drunk driving, Johnson in February 2010 in Montclair and Aguaiza in June 2011 in Linden. Both submitted to breath tests administered using Draeger's Alcotest 7110 MKIII-C ("Alcotest") device, which reported, for each, a blood alcohol concentration, or BAC, above 0.08%. Under New Jersey law, a person operating a motor vehicle with a BAC of 0.08% or more can be convicted of driving while intoxicated (DWI), N.J.S.A. § 39:4-50(a), and Alcotest readings are admissible in DWI prosecutions as evidence of a per se violation of the statute. State v. Chun, 943 A.2d 114, 120 (N.J. 2008) ("Chun I"), cert. denied, 555 U.S. 825 (2008). Faced with their Alcotest results, Johnson and Aguaiza each pleaded guilty to DWI, resulting in a suspension of their driving privileges and the imposition of fines.

Use of the Alcotest in New Jersey began with a one-township pilot program, and, by 2006, the device was being used in seventeen of the state's twenty-one counties. During the roll-out, twenty individuals charged in Middlesex County with DWI challenged the admissibility of their Alcotest results, and their cases were consolidated for consideration of the evidentiary challenge. See Chun I, 943 A.2d at 121. In March

2008, the Supreme Court of New Jersey, having considered the report and recommendation of its Special Master, concluded that the Alcotest and its then-current software (called "firmware") was generally scientifically reliable, and that its results would be admissible and could be used to prove a per se violation of the DWI statute with certain modifications and under certain conditions. See id. at 120; see also id. at 170-74. Following Chun I, Alcotest devices were deployed in all New Jersey counties. In September 2013, the Supreme Court denied a further challenge to the scientific reliability and admissibility of Alcotest results. See State v. Chun, 73 A.3d 1241 (N.J. 2013) ("Chun II").

In April 2013, plaintiffs filed the complaint in this case. By the time of their third amended complaint, filed four months later, plaintiffs had asserted, on behalf of themselves and a putative class, two claims against Draeger: a design defect claim under the New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1 to -11 (count 1), and a common law fraud claim (count 2).

With respect to their PLA claim, plaintiffs asserted that although the Alcotest device is intended to measure the volume and duration of a breath sample, it "lacks a provision to assure that these measurements are accurate or to regularly verify calibration of these measurements." (App. at 297.) This, they contended, is a design defect, as "[p]roper function of the device is dependent on the ability of the device to accurately measure pulmonary function." (App. at 298.) Plaintiffs further claimed that medical tests on plaintiff Johnson, in particular, showed that the exhalation time reported by the

3

device could not have been accurate.

Plaintiffs alleged in their fraud claim that Hansueli Ryser, Draeger's vice president, testified falsely in the Chun factfinding hearing before the Special Master. They cited his statements that he was "100 percent convinced" that the device was capable of producing accurate readings; that he "strongly believed" that the device is scientifically reliable; and that

> no maintenance needed other than verifying, of course, proper operating – that it's operating properly at the time when the unit is calibrated. And after that you do not have to maintain it or it's going to stay alive without doing anything to it.

(App. at 307.) Plaintiffs claimed that it is "impossible" to conclude, as Ryser did, that the Alcotest is scientifically reliable because the device would need to "yield[] the same results on repeated trials," and "[b]y design there are no trials when the Alcotest reports liter volume, blowing time, and flow rate." (Id.) They alleged that Ryser, a "highly trained scientist who fully understood the concept of scientific reliability," had a conflict of interest because he worked for Draeger and was also testifying as an expert in the factfinding hearing. (Id.) Plaintiffs concluded, more broadly, that the quoted statements were false or materially misleading, and that Ryser knew this when he made them.

Plaintiffs claimed, moreover, that the Special Master relied on Ryser's statements in issuing findings, that the Supreme Court relied on the Special Master's findings when it issued Chun I, and that the judge in Johnson's DWI case relied on Chun I in admitting his Alcotest results. They also asserted that Johnson "had actual receipt and relied on the

4

misstatements of . . . Ryser to his detriment," and "[c]lass members had actual receipt from the courts and relied on said misstatements to their detriment." (App. at 308.) Plaintiffs contended that the defective design by Draeger and fraud perpetrated by it proximately caused them injury because conviction was certain based on their Alcotest results, and forced Johnson to choose between resigning from his job or being fired.

Draeger moved to dismiss based on Rooker-Feldman, and argued as well that plaintiffs had failed to plead the requisite elements of both their PLA and fraud claims, meriting dismissal under Fed. R. Civ. P. 12(b)(6). The District Court granted the motion. Applying the four-part Rooker-Feldman test, the Court concluded that it was undisputed that the first and third requirements were met – plaintiffs had lost in state court and their DWI convictions were rendered before they filed their federal suit. With respect to the remaining requirements – that plaintiffs were complaining of injuries caused by the state-court judgments and that they invited review and rejection of those judgments – the Court concluded that it was the legal framework established in Chun, not the purportedly erroneous test results or Ryser's statements, that caused plaintiffs' alleged injuries. Further, the Court held, plaintiffs were seeking rulings that would prevent the enforcement of or render ineffectual the state court orders underlying plaintiffs' convictions – "including but not limited to the Chun decision itself." (App. at 11.) The Court reasoned that a determination in favor of plaintiffs' claims "would effectively require a finding that the Chun case was erroneously decided . . . as were [p]laintiffs' criminal cases, which were indisputably based on the Chun holding." (App. at 12.)

5

Finding that Rooker-Feldman applied, the District Court dismissed the complaint for lack of subject matter jurisdiction. This appeal followed.

## II.

Plaintiffs invoked jurisdiction under 28 U.S.C. § 1332(d). With the caveat that subject matter jurisdiction is at issue, we have jurisdiction over the final order of dismissal under 28 U.S.C. § 1291. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163 n.3 (3d Cir. 2010) ("To the extent that we have subject matter jurisdiction, we exercise it under 28 U.S.C. § 1291."). "A district court's dismissal for lack of subject matter jurisdiction is a question of law, over which we exercise plenary review." McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006).

## III.

Plaintiffs contend that the Rooker-Feldman doctrine does not preclude their claims because they were not parties to the Chun case and are not seeking to overturn it or their DWI convictions. We agree with the District Court that Rooker-Feldman precludes the exercise of jurisdiction over plaintiffs' design defect claim, but conclude that their fraud claim does not fall within its scope.

## A.

Grounded in 28 U.S.C. § 1257, which vests appellate jurisdiction over state-court judgments exclusively in the Supreme Court of the United States, the Rooker-Feldman

doctrine[1] circumscribes federal subject matter jurisdiction by precluding a district court from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-85 (2005). As the District Court recognized, the doctrine applies if four requirements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining, 615 F.3d at 166 (alterations in original) (quoting Exxon, 544 U.S. at 284).

There is no question that the third element is satisfied, as Chun I and plaintiffs' DWI cases preceded this action. It is also clear that the first element is met. Plaintiffs argue, however, that they were not parties to Chun, and that Rooker-Feldman does not apply when the federal plaintiff was not a party to the state case. Plaintiffs are correct that Rooker-Feldman has been held inapplicable when "the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." Lance v. Dennis, 546 U.S. 459, 464 (2006) (per curiam). Plaintiffs may not have been parties to Chun I, which was decided well before plaintiffs' arrests in 2010 and 2011, but they were certainly parties in their respective DWI cases. Moreover, Johnson unsuccessfully attempted to challenge the admissibility of his Alcotest results, see State v. Johnson, 2011

---

[1] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

7

WL 2410039 (N.J. Super. Ct. App. Div. May 12, 2011), and, given that plaintiff Aguaiza pleaded guilty after his Alcotest results were "admitted on a per se basis," Aguaiza either did not challenge the admissibility of his results or did so unsuccessfully. (See App. at 291.) Plaintiffs, therefore, lost in state court.

For both claims, then, the question becomes whether the second and fourth elements have been met. The second examines the source of the plaintiffs' injury: "when the source . . . is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Great W. Mining, 615 F.3d at 167.

The source of the injury targeted by plaintiffs' PLA claim is the state courts' evidentiary rulings in their DWI cases, not Draeger. Plaintiffs have alleged that they were tested using a device that could not be fully calibrated, and that based on the (allegedly erroneous) Alcotest results, they faced "certain conviction," suffered physical and emotional injuries, and, in Johnson's case, had to decide whether to resign or be terminated from his job. These injuries can be traced directly to the state court's decision in each plaintiff's case that his Alcotest reading was admissible, and to the subsequent DWI conviction. It was not Draeger's design, then, that caused plaintiffs' injuries; it was the state court's acceptance of the Alcotest as scientifically reliable, and of its consequent admissibility determination.

The fraud claim is different. In Great Western, where the plaintiff alleged that its state-court losses resulted from "a 'corrupt conspiracy'" between an alternative dispute

8

resolution provider and members of the state judiciary, we held that the plaintiff's injury was not caused by the state judgments; rather, the assertion was that the "alleged conspiracy violated [the plaintiff's] right to be heard in an impartial forum." 615 F.3d at 161. In essence, the claim was that the plaintiff was "forced to litigate in a rigged system." Id. at 171. Similarly, in Williams v. BASF Catalysts LLC, the plaintiffs alleged that a company and its law firm conspired to conceal evidence of asbestos in the company's products to minimize its tort liability. 765 F.3d 306, 310-11 (3d Cir. 2014). We held that Rooker-Feldman did not deprive the district court of jurisdiction over the case, which involved claims for, inter alia, fraud and fraudulent concealment. Id. at 315. We explained that the claims "hinge[d] on [the defendants'] actions before and during earlier asbestos-injury lawsuits." Id. As the suit did "not concern state-court judgments, but rather independent torts committed to obtain them," Rooker-Feldman did not apply. Id.

Here, plaintiffs have alleged that Ryser made false statements that the Supreme Court relied upon in deciding Chun I, and that the judge presiding over Johnson's DWI case relied on Chun in admitting Johnson's Alcotest results. This is akin to contending that, as in Great Western, plaintiffs were "forced to litigate in a rigged system," or, as in BASF, their convictions and/or the Chun decision were procured on the basis of fraud. The source of the injury complained of via plaintiffs' fraud claim, then, is Draeger, not the state court judgments.

We proceed, however, to nonetheless discuss the remaining Rooker-Feldman

9

element for both claims. This requirement examines whether a district court would be required to conduct "'a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.'" Great W. Mining, 615 F.3d at 169 (quoting Bolden v. City of Topeka, Ks., 441 F.3d 1129, 1143 (10th Cir. 2006)). Even if the matter was already litigated in state court, a federal suit presenting "some independent claim, even if that claim denies a legal conclusion reached by the state court," is permissible. Id. (quoting Exxon, 544 U.S. at 293) (internal quotation marks omitted).[2]

Plaintiffs' PLA claim seeks federal review of whether the Alcotest produces valid BAC readings in view of its alleged calibration shortcomings. This not only seeks to revisit what was already presented to the state court – specifically, an argument that the results were not accurate – but also effectively requests rejection of the state courts' ultimate determination that the results were admissible in the DWI cases because they were scientifically reliable. In Johnson's case, for example, he requested an evidentiary hearing on the admissibility of his Alcotest results, arguing that his pulmonary expert had

_____

[2] Prior to Exxon, our formulation of the Rooker-Feldman doctrine held a federal case barred "'where the claim raised in federal court was actually litigated in state court' or 'where the federal claim is inextricably intertwined with the state adjudication.'" Gary v. Braddock Cemetery, 517 F.3d 195, 200 n.5 (3d Cir. 2008). As part of the latter inquiry, we examined whether "federal relief [could] only be predicated upon a conviction that the state court was wrong." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006) (citation and internal quotation marks omitted). We have since recognized, however, that a measure of tension is permissible: the federal outcome can permissibly undermine a conclusion or rationale of the state judgment without implicating Rooker-Feldman. See Great W. Mining, 615 F.3d at 173. As such, the District Court's concern that the ruling plaintiffs sought would "render ineffectual" the state court rulings does not necessarily compel a finding that the fourth Rooker-Feldman requirement is met.

10

concluded that his Alcotest results "'could not be valid.'" Johnson, 2011 WL 2410039, at *1. This is exactly what Johnson argued before the District Court, framing it instead as a product-liability issue.

Again, however, the fraud claim is different. Plaintiffs are not inviting rejection of state judgments, but are presenting an "independent claim" relating to how the state-court decisions on admissibility were reached; *i.e.*, on the basis of testimony that was allegedly untrue. See, e.g., Johnson v. Pushpin Holdings, LLC, 748 F.3d 769, 773 (7th Cir. 2014) (federal suit seeking damages for "a fraud that resulted in a judgment adverse to the plaintiff" was not barred because it "does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment"); Parker v. Lyons, 757 F.3d 701, 706 (7th Cir. 2014) ("Because [the plaintiff's] claims are premised on detailed allegations that the winning party obtained a favorable civil judgment by corrupting the state judicial process, Rooker-Feldman does not bar them."). While a decision that Chun I and/or plaintiffs' DWI convictions were tainted by alleged fraud would undermine the force of those judgments, this is not the same as asking that the state judgments be rejected.

In sum, we conclude that Rooker-Feldman barred the exercise of subject matter jurisdiction over plaintiffs' product liability claim, but not their fraud claim.

B.

Notwithstanding the above, plaintiffs' fraud claim fails for another reason: they have not pleaded a plausible claim. See OSS Nokalva, Inc. v. European Space Agency,

11

617 F.3d 756, 761 (3d Cir. 2010) ("[W]e 'may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.'" (quoting Kabakjian v. United States, 267 F.3d 208, 213 (3d Cir. 2001)). To survive dismissal under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In New Jersey, a common law fraud claim requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Plaintiffs' claim fails on the first element, as the cited statements by Ryser represent his opinion regarding the scientific reliability of the Alcotest and whether the device needed ongoing maintenance. Statements of opinion are not "presently existing or past fact[s]." See Suarez v. Eastern Int'l Coll., 50 A.3d 75, 86 (N.J. Super. Ct. App. Div. 2012) (stating that neither "expressions of opinion" nor "'puffery'" can establish the first element of common law fraud claim), certif. denied, 59 A.3d 1290 (N.J. 2013).

Even were these statements construed as fact rather than opinion, plaintiffs have failed to adequately plead that the statements were false, or that Ryser or Draeger knew

12

or believed that they were false. To be sure, they allege these elements, but only in the most conclusory fashion – contending that the cited testimony "was false or constituted material misleading statements . . . by Mr. Ryser, who was aware of the falsity of the statements when he made them under oath." (App. at 307.) However, "'a formulaic recitation of the elements of a cause of action'" does not satisfy the plausible pleading standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiffs come close to adequately alleging the falsity of the scientific-reliability statements when they aver that it is "impossible" to conclude that the Alcotest is scientifically reliable because that would require it to yield the same results upon multiple tests and no tests are available for the "volume, blowing time, and flow rate." (App. at 307.) But even taking as true that Ryser is a "highly trained scientist" who grasps the concept of scientific reliability, plaintiffs' allegations are simply not enough to permit an inference that Ryser's statement that he believed the overall instrument to be scientifically reliable was false because certain sub-parameters could not be routinely tested, or to infer further that he believed his statements to be false.[3]

IV.

For the foregoing reasons, the order of the District Court will be affirmed.

---

[3] Plaintiffs have argued to us that the District Court's dismissal of their complaint violated the Ninth and Tenth Amendments of the United States Constitution. They waived this argument by failing to raise it below. In re Diet Drugs Prod. Liab. Litig., 706 F.3d 217, 226 (3d Cir. 2013). In any event, the argument – essentially, that plaintiffs have a constitutional right to a federal forum in which to assert their rights under state product liability law, apparently notwithstanding the requirements of subject matter jurisdiction – lacks merit.