SIXTH DIVISION

May 16, 1997

No. 1-97-0975

JAMES J. PAPPAS, )      Appeal from

)   the Circuit Court

Petitioner-Appellant, )    of Cook County.

) 

v. )

)

CALUMET CITY MUNICIPAL OFFICERS' ELECTORAL )

BOARD, MAGDALENA WOSCZYNSKI, Chairman; )     No.  97-CO-62

DOMINIC GIGLIOTTI, Member; MICHELLE )

QUALKINBUSH, Member; GEARY DePUE, Objector; )

DAVID ORR, Cook County Clerk; and MICHELLE )

QUALKINBUSH, City of Calumet City, Illinois, )

Clerk, )       Honorable

)   Michael J. Murphy,

Respondents-Appellees. )    Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Petitioner appeals the trial court's ruling affirming the Calumet City Municipal Officers' Electoral Board's (Board) refusal to order petitioner's name printed on the ballot for Mayor of Calumet City.  Petitioner had been convicted of two felonies.  Petitioner claims that the trial court erred in ruling that the Municipal Code prohibited petitioner from running for office.  Rather, petitioner argues, the Municipal Code should be read 
in
 
pari
 
materia
 with the Election Code which permits ex-felons to run under certain circumstances.  For the first time on appeal, petitioner argues that restricting access to the ballot implicates a fundamental right, the right to vote, and that the court must analyze the municipal provision under a strict scrutiny standard.  We reject petitioner's claim that the legislature intended to restore a felon's right to run for municipal office.  Further, this court cannot accurately assess the constitutionality of the provision without meaningful input from the Attorney General.  

James J. Pappas filed nomination papers asserting that he was qualified to hold the office of Mayor in Calumet City, Illinois.  However, Pappas had been convicted of two felony offenses.  Under the Illinois Municipal Code:

"A person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony."  65 ILCS 5/3.1-10-5(b) (West 1994).

Accordingly, the Calumet City Municipal Officer's Electoral Board determined that Pappas was not eligible to run for office and that his nomination papers were invalid.  See 10 ILCS 5/10-10 (West 1994).  

Pappas sought administrative review of the Board's determination.  In response to the Board's motion for summary judgment, Pappas argued that section 29-15 of the Election Code permitted ex-felons to run for offices under certain circumstances.  The trial court found that the referenced provision did not apply to Pappas' bid for a municipal office.  In granting the Board's motion, the court further determined that the applicable municipal provision was constitutional under a rational basis analysis.  

Pappas then filed an emergency motion for review, arguing that the legislature did not intend for section 3.1-10-5 of the Municipal Code to bar ex-felons from municipal office.  The unambiguous language of section 3.1-10-5 is the clearest indication of the legislature's intent.  
Stone v. Department of Employment Security Bd. of Review
, 151 Ill. 2d 257, 602 N.E.2d 808 (1992).  We find that the plain language of section 3.1-10-5 bars Pappas from holding municipal office. 

However, Pappas argues that this court should read the Municipal Code 
in
 
pari
 
materia
 with the Election Code and the Uniform Code of Corrections.  
In
 
pari
 
materia
 is a tool of statutory construction courts utilize in ascertaining the legislative intent of statutes concerning the same matter.  
Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School Dist. No. 4
, 215 Ill. App. 3d 506, 575 N.E.2d 556 (1991).  The Illinois Supreme Court has stated that: 

"[I]t is clear that sections 
in pari materia
  should be considered with reference to one another so that both sections may be given harmonious effect.  ***  Even when in apparent conflict, statutes, insofar as is reasonably possible, must be construed in harmony with one another."  
United Citizens 
of Chicago and Illinois v. Coalition to Let the People Decide in 1989
, 125 Ill. 2d 332, 339, 531 N.E.2d 802, 804 (1988), quoting 
People v. Maya
, 105 Ill. 2d 281, 286-87, 473 N.E.2d 1287, 1290 (1985).  

Such an interpretation, Pappas claims, will restore his right to run for municipal office.  A review of these provisions leads this court to a contrary conclusion.  

Section 29-15 of the Election Code provides:

"Any person convicted of an infamous crime
 as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a 

pardon for the offense, or 
otherwise
 
according
 
to
 
law
."  (Emphasis added.)  10 ILCS 5/29-15 (West 1994). 

Pappas directs this court's attention to section 5-5-5(b) of the Uniform Code of Corrections to interpret the phrase "otherwise according to law."  See 730 ILCS 5/5-5-5(b) (West 1994).  Section 5-5-5(b) provides that "[a] person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence."  730 ILCS 5/5-5-5(b) (West 1994).  While acknowledging that he is not running for an office created by the Illinois Constitution, Pappas claims that "otherwise according to law" must be interpreted as permitting one convicted of an infamous crime to run for any elective office upon completion of his sentence. 

Pappas correctly notes that the Illinois Supreme Court, when faced with provisions which appeared to be ambiguous and conflicting, held that the Illinois Municipal Code and the Election Code could be construed 
in
 
pari
 
materia
.  
United Citizens 
of Chicago and Illinois v. Coalition to Let the People Decide in 1989
, 125 Ill. 2d 332, 531 N.E.2d 802 (1988).  However, we have found no ambiguity in the clear language of section 3.1-10-5 prohibiting felons from seeking municipal office.  

In addition, we find no conflict between the referenced provisions.  Section 29-15 of the Election Code states that the legislature has the power to restore those convicted of infamous crimes the right to run for election "according to law."  10 ILCS 5/29-15 (West 1994).  In enacting section 5-5-5(b), the legislature saw fit to allow felons to run for constitutional office upon completion of sentence or if pardoned.  Section 5-5-5(b), however, has no application to the municipal office Pappas seeks.  The legislature addressed the limitations on eligibility for municipal office when amending section 3.1-10-5 of the Municipal Code in 1992.  While the legislature had the opportunity to add a restoring clause, the legislature failed to do so.  Accordingly, we will:

"[C]onstrue the statute as it is and *** not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute."  
Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School Dist. No. 4
, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991).

Therefore, we find that the plain language of section 3.1-10-5 of the Municipal Code bars Pappas' access to the municipal ballot.

In his pleadings before this court, Pappas states that he "does not seek to challenge the constitutionality of the revised Illinois Municipal Code, 65 ILCS 5/3.1-10-5.  Instead, the Appellant in the Circuit Court and before this Court contends that the Municipal Code should be read in 
pari
 
materia
 with the Election Code ***."  Pappas claims that because he "did not challenge the constitutionality of the Municipal Code, it [was] unnecessary and improper for the Circuit Court to apply its own constitutional analysis ***."

While Pappas distances himself from the constitutional discussions in the prior proceedings, Pappas responds to the appellees' arguments by raising a unique constitutional challenge in his reply brief on appeal.  Pappas cites to the Illinois Supreme Court's decision in 
Tully v. Edgar
, 171 Ill. 2d 297, 664 N.E.2d 43 (1996), for the position that the constitutionality of section 3.1-10-5 should be analyzed under a strict scrutiny standard.  Pappas argues that the limitation the Municipal Code places upon a candidate's access to the ballot implicates the fundamental right to vote, and therefore section 3.1-10-5 should be analyzed under a strict scrutiny standard.  The precise issue of whether Municipal Code section 3.1-10-5 implicates Pappas' fundamental rights is one of first impression in Illinois.  A party asserting such a challenge must comply with Illinois Supreme Court Rule 19, which provides:

"In any cause or proceeding in which the constitutionality of a statute, ordinance or administrative regulation affecting the public interest is raised, and to which action or proceeding the State or the political subdivision, agency, or officer affected is not already a party, the litigant raising the constitutional issue shall serve an appropriate notice thereof on the Attorney General, State's Attorney, municipal counsel or agency attorney, as the case may be."  134 Ill. 2d R. 19(a).

Pappas acknowledges that he has not served an appropriate notice on the Attorney General, and he does not seek leave to do so on appeal.  On the contrary, Pappas claims that the appellees' position that Supreme Court Rule 19 bars this court's consideration of a constitutional challenge is "misplaced *** because *** [the] Appellant does not seek to challenge the constitutionality of [section 3.1-10-5]."  We decline to resolve this serious question of the constitutionality of section 3.1-10-5 without affording the Attorney General and the litigants the opportunity for meaningful participation.  

The dissent suggests that despite the failure of the petitioner to raise the constitutional issue in a timely fashion or to comply with the terms of Supreme Court Rule 19, we should treat these proceedings as if they were merely extensions of the trial court and allow petitioner to amend his pleadings.  Although the dissent is concerned that the constitutional issue cannot be raised in a setting other than a hurried election contest, the plaintiff in 
Coles v. Ryan
 91 Ill. App. 3d 382, 414 N.E.2d 932 (1980), provides an appropriate road map to consideration of the issue--a declaratory judgment action.

Therefore, we affirm the ruling of the trial court.

Affirmed.

GREIMAN, P.J., concurs.

ZWICK, J., concurs in part and dissents in part.

JUSTICE ZWICK, concurring in part, dissenting in part:

The Calumet City Municipal Officers' Electoral Board (the "Electoral Board") refused to place James J. Pappas ("petitioner") on the April 1, 1997, general election ballot as a candidate for the office of mayor of Calumet City. Although petitioner's nominating papers were in order, the Electoral Board ruled that section 5/3.1-10-5 of the Municipal Code (65 ILCS 5/3.1-10-5 (West 1996)) disqualified petitioner from being a candidate because he had been convicted of two felonies some 15 years earlier. Petitioner, on March 11, 1997, sought judicial review in the circuit court of Cook County. The circuit court, on March 18, 1997, affirmed the Electoral Board's decision by written order.

Petitioner filed notice of appeal in this court on March 19, 1997, and filed an emergency motion seeking expedited appellate review on March 20, 1997. Petitioner's motion was filed just before ballots for the election were to be printed. Respondents filed responses to the motion on March 24, 1997, and petitioner filed his reply that same day. On March 25, 1997, without the benefit of either briefs or oral argument, we entered judgment affirming the trial court. Because we were unable to issue our written opinion within the 21-day jurisdictional window which exists following our entry of judgment (see 134 Ill. 2d R. 367(b); 
Woodson v. Chicago Board of Education
, 154 Ill. 2d 391, 397, 609 N.E.2d 318 (1993))
, we stayed judgment pending filing of the attached opinion. 

The majority's opinion implies that petitioner challenged the constitutionality of Municipal Code section 5/3.1-10-5 for the first time on appeal. This is simply not the case. My review of the record indicates petitioner cited 
Coles v. Ryan
, 91 Ill. App. 3d 382, 414 N.E.2d 932 (1980), both in the proceedings before the Election Board and in his petition for judicial review in the circuit court. Both the Election Board and the circuit court discussed 
Coles
 and its relation to the constitutionality of the Municipal Code in rendering their decisions. The Election Board determined that it was without jurisdiction to address a constitutional challenge to the Act; the circuit court rejected the analysis set out in 
Coles
.

In 
Coles
, the sole issue was whether the equal protection clause of the fourteenth amendment to the United States Constitution was violated by the General Assembly's disparate treatment of convicted felons who seek election to a constitutionally created office 
vis
 
a
 
vis
 those who seek election to a legislatively created office. The court noted that the General Assembly had made provisions restoring the qualification of convicted felons to run for constitutional office upon completion of their sentence pursuant to the Uniform Code of Corrections (see 730 ILCS 5-5-5(b)(West 1996)), but had failed to provide this same right to those who run for the lesser offices. 
Coles
, 91 Ill. App. 3d at 385. Applying traditional equal protection analysis, the court determined 
that the equal protection clause was violated because there was no rational basis justifying the distinction. 

Although the trial court recognized that the 
Coles
 decision is factually similar to the instant case, the court declined to follow the result suggested by 
Coles
. Instead, the c
ourt
 stated it believed a rational basis supporting the legislative distinction existed, even though the appellate court in 
Coles
 stated no such basis was apparent. 
Coles
, 91 Ill. App. 3d at 386. In my view, whatever else may be said, the trial court violated its obligation to follow appellate precedent in rendering its decision. Although, as the respondents have argued, 
Coles
 involved a candidate for township supervisor and certain provisions of the Election Code, as opposed to a candidate for mayor and provisions of the Municipal Code that are at issue here, the ultimate issue is the same in both cases. If there was an equal protection violation in 
Coles
, it follows logically and necessarily that there is an equal protection violation in petitioner's case. 
 

An even more troubling aspect of this case, however, is not in what the trial court did, but rather, in what the majority here has failed to do. Recently, in 
Tully v. Edgar
, 171 Ill. 2d 297, 664 N.E.2d 43 (1996), our supreme court explained that when legislation affects 
any
 stage of the election process, including the stage at which candidates are nominated, the public's fundamental right to vote is necessarily implicated. 
Tully
, 171 Ill. 2d at 307. Moreover, although the court recognized that legislation is presumed to be constitutional when challenged in the courts, it stated this presumption is lessened when the right to vote is at issue. 
Tully
, 171 Ill. 2d at 304. The court determined that "far more demanding scrutiny" is warranted in cases involving legislation that affects voting rights. 
Tully
, 171 Ill. 2d at 307. 

The 
Tully
 decision represents a recent and dramatic change in Illinois election law. Before 
Tully
, it was generally recognized that the only rights at stake in an election case brought by a potential candidate for office were the candidate's non-fundamental rights to government employment. See e.g., 
Coles
, 91 Ill. App. 3d at 385; 
Strobeck v. Illinois Civil Service Com.
, 70 Ill. App. 3d 772, 388 N.E.2d 912 (1979). However, the supreme court has now recognized the significant difficulties which arise when attempting to separate a candidate's right to run for public office from the right of the electorate to place that person in office. The 
Tully
 case establishes that limiting the former necessarily restricts the latter.

In justifying its decision to avoid the constitutional issue presented by petitioner, the majority 
cites petitioner's failure to comply with Supreme Court Rule 19. This argument is makeweight. As I have noted, petitioner's constitutional challenge was timely raised in both the Election Board proceedings and in the trial court. Although Rule 19 provides that a litigant must give "prompt notice" to the State if he wishes to challenge the constitutionality of a statute, the rule is directory only, and no where does the rule state that failure to give such notice necessarily must result in waiver of the constitutional claim. Such an interpretation of the rule is particularly unfair where, as here, the respondents have raised the rule for the first time in their motions on appeal. Moreover, Rule 19 specifically envisions that notice of a constitutional challenge may be given to the State when a constitutional issue is raised for the first time on review. See 134 Ill. 2d R. 19(b). This being the case, I would grant petitioner leave to comply with the rule rather than find waiver. 

The majority next determines that petitioner has waived his constitutional claim because he failed to argue 
Tully
 in his initial motion before this court and because he now states he did not challenge the constitutionality of the Municipal Code in the circuit court.
(footnote: 1) However, the rule of waiver is a limitation on the parties, not the courts. A reviewing court, in the exercise of its responsibility for a just result and the maintenance of a sound and uniform body of precedent, may consider issues not properly preserved by the parties. 
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 514, 639 N.E.2d 1273 (1994). In this case, the potential harm to the electorate's voting rights is too severe to invoke waiver simply because petitioner delayed four days in raising 
Tully
.  

I recognize that the passing of the April 1 election has rendered moot the petitioner's request to be added to the ballot, and that no meaningful relief can now be given to the petitioner. The issue presented, however, is of substantial public interest and warrants consideration even now, after the election is over. Cf. 
Cintuc, Inc. v. Kozubowski
, 230 Ill. App. 3d 959, 972-73, 596 N.E.2d 101 (1992); 
Trotter v. Education Officers Electoral Board of Canton Union School District No. 66
, 158 Ill. App. 3d 848,

512 N.E.2d 115 (1987). In addition, this issue should be addressed because it is "capable of repetition, yet evading review." 
Stephens v. Education Officers Electoral Board
, 236 Ill. App. 3d 159, 161, 603 N.E.2d 642 (1992). This is particularly true since a future challenge to this Municipal Code section will likely be raised in the hurried and expedited fashion typical of election cases. Because these circumstances do not allow for the possibility of "full litigation" (
Stephens
, 236 Ill. App. 3d at 161), it would be better for us to decide this important constitutional question now after the parties have been given the opportunity to brief it, rather than at the last minute in a subsequent case. Such an approach is also preferable to the majority's suggestion that the petitioner file a declaratory judgment action in the circuit court. It is a patent waste of the parties' resources and the circuit court's time to require that a second record be created when we already have before us one which fully presents the issue. 

In sum, although I have no particular disagreement with the majority's analysis of the statutory language involved, I am disheartened by its unwillingness to consider the petitioner's significant constitutional challenge. Instead of summarily rejecting petitioner's claim by invoking Supreme Court Rule 19 and the waiver rule, I would allow him the opportunity to comply with the notice provisions of Rule 19 and then order whatever constitutional arguments are raised to be briefed and argued on a non-expedited basis. In my view, the rights of the voters of this State mandate nothing less.

FOOTNOTES
1:
The majority incorrectly states that petitioner filed a "reply brief." In fact, the document in which petitioner cites 
Tully v. Edgar
 is his "Motion for Leave to File Reply to Respondents." This is 
not
 a case involving a constitutional challenge made for the first time by an appellant who has otherwise had the opportunity to fully brief his arguments.