2018 IL App (1st) 171976

FIRST DIVISION
March 30, 2018

No. 1-17-1976

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, by KIMBERLY M. FOXX, State's Attorney of Cook County, | ) ) ) | Appeal from the Circuit Court of Cook County |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CH 5276 |
| | ) | |
| ROGER AGPAWA, in his official capacity as Mayor of the City of Markham, | ) ) | The Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Roger Agpawa was elected Mayor of the City of Markham at the April 4, 2017, consolidated election. Plaintiff Kimberly Foxx, in her capacity as State's Attorney of Cook County, filed a complaint for *quo warranto*, declaratory judgment, and a permanent injunction, alleging that defendant was ineligible to serve as mayor or to take the oath of office due to his 1999 federal felony conviction for mail fraud. The parties filed cross-motions for judgment on the pleadings, and the circuit court of Cook County granted judgment in favor of plaintiff. Defendant appeals. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     In August 1999, defendant pleaded guilty in federal court to one count of felony mail fraud. He was sentenced to 36 months' probation, was required to perform 200 hours of community service, and was ordered to make restitution. Defendant completed all the terms of his sentence. Defendant has not received a pardon from the President of the United States. It is undisputed that defendant has engaged in numerous civic-minded activities since his conviction, including, among others, serving as the Fire Chief of the City of County Club Hills, a Code Court Administrator for the Markham Municipal Court, and a Deputy Fire Chief and 911 coordinator for the City of Markham. He is an active member of his church, is the president of the booster club for a local high school, and has participated in numerous community-based improvement programs.

¶ 4     Defendant filed nominating petitions for the office of Mayor of the City of Markham for the April 4, 2017, consolidated election. No preelection challenges were made to his petitions and defendant's name appeared on the ballot. Prior to the election, on March 23, 2017, the plaintiff sent defendant a letter informing him that he was ineligible to serve as mayor due to his prior felony conviction and, if elected, he would be ineligible to take the oath of office. Defendant won the election. The Cook County Clerk certified the election results and declared defendant the winner of the election for Mayor of the City of Markham.

¶ 5     On April 24, 2017, plaintiff filed a verified complaint for *quo warranto*, declaratory judgment, and injunctive relief. Plaintiff's complaint contended that defendant, pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/3.1-10-5(b) (West 2016)), was not eligible to take the oath of office for a municipal office because of his felony conviction. Furthermore, plaintiff asserted that, pursuant to section 29-15 of the Illinois

Election Code (Election Code) (10 ILCS 5/29-15 (West 2016)), defendant had been convicted of an "infamous crime" and was therefore prohibited from "holding any office of honor, trust, or profit, unless such person is again restored to such right by the terms of a pardon for the offense or otherwise according to law." It is uncontested that defendant has not received a presidential pardon. Plaintiff, therefore, asserted that defendant was ineligible to take the oath of office for Mayor of the City of Markham.

¶ 6    Also on April 24, 2017, plaintiff filed a motion for a temporary restraining order and preliminary injunction. On April 25, 2017, the Cook County Clerk certified the results of the April 4, 2017, consolidated election. On April 28, 2017, the circuit court granted plaintiff's motion for a temporary restraining order and preliminary injunction, enjoining defendant from taking the oath of office until further order of court.

¶ 7    Defendant filed an answer and affirmative defenses to plaintiff's complaint. He asserted, in relevant part, that pursuant to sections 5-5-5(a) and (b) of the Uniform Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-5(a), (b) (West 2016)), his civil rights, including the right to run for and hold elected municipal office, "remain intact." He further asserted that section 3.1-10-5 of the Municipal Code and section 29-15 of the Election Code (collectively, the Conviction Statutes), violate his rights and the rights of all "similarly situated" voters of the City of Markham under the first and fourteenth amendments to the federal constitution (U.S. Const. amends. I, XIV), and article I, sections 2 and 4 of the Illinois Constitution (Ill. Const. 1970, art. 1, §§ 2, 4).

¶ 8    The parties filed cross-motions for judgment on the pleadings. The cross-motions were fully briefed and after oral argument on August 8, 2017, the circuit court took the matter under advisement. On August 9, 2017, the circuit court entered a written order granting plaintiff's

motion for judgment on the pleadings and denying defendant's motion. Defendant was therefore barred from taking the oath and holding the office of Mayor of the City of Markham. Defendant filed a timely notice of appeal.

¶ 9                                    ANALYSIS

¶ 10    On appeal, defendant advances two principal arguments. First, he contends that under the relevant statutory scheme, when the Election Code, the Municipal Code, and the Code of Corrections are read *in pari materia*, his "right" to seek municipal office is a "civil right" that was restored under section 5-5-5(a) of the Code of Corrections following his completion of all of the terms of his federal sentence. Second, he advances constitutional arguments, arguing that the application of the Conviction Statutes operates to deprive him and all other similarly situated voters of the City of Markham of their constitutionally protected voting rights, and deprives defendant of his "right" to hold municipal office. We address these arguments in turn.

¶ 11    A motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2016)) "concedes the truth of the well-pleaded facts in the nonmovant's pleadings." *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 16. Where the parties file cross-motions for judgment on the pleadings, they generally acknowledge that there are no questions of fact and that the issues involved are questions of law. See *Zipf v. Allstate Insurance Co.*, 54 Ill. App. 3d 103, 108 (1977). We review a circuit court's order granting judgment on the pleadings *de novo*. *Trujillo*, 2014 IL App (1st) 123419, ¶ 16.

¶ 12                                   I. Statutory Challenges

¶ 13     We first set forth the constitutional and statutory provisions relevant to defendant's arguments.

¶ 14     Article XIII, section 1 of the Illinois Constitution states, "A person convicted of a felony, bribery, perjury or other infamous crime shall be ineligible to hold an office created by this Constitution. Eligibility may be restored as provided by law." Ill. Const. 1970, art. XIII, § 1.

¶ 15     Section 5-5-5(a) of the Code of Corrections states, "Conviction and disposition shall not entail the loss by the defendant of any civil rights, except under this Section and Sections 29-6 and 29-10 of The Election Code, as now or hereafter amended." 730 ILCS 5/5-5-5(a) (West 2016). Subsection (b) provides, "A person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence." *Id.* § 5-5-5(b).

¶ 16     The Election Code provides that a person convicted under either section 29-6 (mutilation of election materials, a Class 4 felony), or section 29-10 (perjury, a Class 3 felony), is ineligible for public employment for a period of five years immediately following completion of his or her sentence. 10 ILCS 5/29-6, 29-10(b) (West 2016). Section 29-10 of the Election Code further provides that public employment includes "any elected or appointed office created by the Constitution or laws of this State, or any ordinance of a unit of local government," and "any position as an employee of the State of Illinois, or a unit of local government or school district." *Id.* § 29-10(b).

¶ 17     Section 29-15 of the Election Code provides, "Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended,[ ] shall thereafter be prohibited from holding any office of honor, trust, or profit, unless

such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law."[1] *Id.* § 29-15.

¶ 18 Finally, section 3.1-10-5(b) of the Municipal Code provides, "A person is not eligible to take the oath of office for a municipal office if that person *** has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 65 ILCS 5/3.1-10-5(b) (West 2016).

¶ 19 Defendant argues that his right to hold municipal office is a "civil right" that was restored under section 5-5-5(a) of the Code of Corrections following the completion of all of the terms of his federal sentence. He relies on *Tully v. Edgar*, 171 Ill. 2d 297 (1996), and *East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997), to argue that Illinois courts recognize the "right" to hold office. He also relies on decisions from the Seventh Circuit Court of Appeals to assert that the right to hold public office is an important "civil right" that is restored to convicted felons after completion of their sentences. See *United States v. Gillaum*, 372 F.3d 848, 861 (7th Cir. 2004) ("Under Illinois law *** a criminal defendant's rights to vote and hold office are automatically restored to him at the completion of his prison sentence.").

---

[1]Under section 124-1 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure), an infamous crime was defined as:

"the offenses of arson, bigamy, bribery, burglary, deviate sexual assault, forgery, incest or aggravated incest, indecent liberties with a child, kidnaping or aggravated kidnaping, murder, perjury, rape, robbery, sale of narcotic drugs, subornation of perjury, and theft if the punishment imposed is imprisonment in the penitentiary." Ill.Rev.Stat.1983, ch. 38, ¶ 124-1 (repealed by Pub. Act 84-1047, § 2 (eff. July 1, 1986)).

"[C]ourts reviewing section 29-15 of the Election Code subsequent to the repeal of section 124-1 of the Code of Criminal Procedure have continued to apply its definition of the term 'infamous crime.' " *Alvarez v. Williams*, 2014 IL App (1st) 133443, ¶ 10. Here, defendant does not argue on appeal that felony mail fraud is not an "infamous crime." As the circuit court noted in its written order, "Felony fraud offenses clearly implicate issues of common honesty and decency, and therefore constitute 'infamous crimes' as long defined under Illinois law." *See People ex rel. Keenan v. McGuane*, 13 Ill. 2d 520, 534 (1958); *People ex rel. Symonds v. Gualano*, 97 Ill. App. 2d 248 (1968).

¶ 20    Defendant further contends that a convicted felon's loss of civil rights is a collateral consequence of the conviction and not the punishment itself. He claims that section 5-5-5 of the Code of Corrections "sets the limit to the collateral deprivation of civil rights of a conviction." He argues that section 29-15 of the Election Code imposes a stricter collateral consequence than section 5-5-5 of the Code of Corrections because the Election Code renders an individual ineligible to hold any office as a result of being convicted for an "infamous crime," whereas the Code of Corrections allows for a convicted felon's eligibility to hold any elected office to be restored upon completion of his sentence. He argues that the Code of Corrections, the Election Code, and the Municipal Code must be read *in pari materia* to avoid "negation of at least one of these statutes." We disagree.

¶ 21    Defendant acknowledges that this court has rejected similar challenges to section 29-15 of the Election Code based on section 5-5-5 of the Code of Corrections. This court has previously held that the source of a convicted felon's disqualification from holding municipal office is not article XIII, section 1 of the Illinois Constitution because public municipal offices are not "created by" the Illinois Constitution; public municipal offices are created by legislative enactment. *People ex rel. Ryan v. Coles*, 64 Ill. App. 3d 807, 811 (1978). We have also previously held that there is no ambiguity in section 29-15 of the Election Code's prohibition on felons holding municipal office, and that there is no conflict between section 5-5-5(b) of the Corrections Code and section 29-15 of the Election Code. *Pappas v. Calumet City Municipal Officers' Electoral Board*, 288 Ill. App. 3d 787, 790 (1997) (rejecting a mayoral candidate's claim that his right to run for municipal office was restored upon completion of his felony sentences).

¶ 22    Defendant contends, however, that our supreme court in *Tully* and *East St. Louis*, and numerous Seventh Circuit Court of Appeals cases, recognized that the "right" to hold an elective municipal office is "an important civil right." He contends that holding public office is a "civil right," and that we have never addressed whether section 5-5-5(a) of the Code of the Corrections causes a person to lose or restores the "right" to run for municipal elective office. We disagree with defendant's conclusion that *Tully* and *East St. Louis* recognize such a "right."

¶ 23    In *Tully*, the plaintiff voter challenged the constitutionality of Public Act 89-5 (Pub. Act 89-5, eff. Jan. 1, 1996), which purported to change the position of trustee of the Board of Trustees of the University of Illinois from an elective to an appointive office. *Tully*, 171 Ill. 2d at 300. The plaintiff contended that Public Act 89-5 violated his fundamental voting rights under article III, section 1 of the Illinois Constitution (Ill. Const. 1970, art. III, § 1), because it shortened the term of elected trustees after the election occurred and operated as a "post-hoc" negation of the plaintiff's right to vote. *Tully*, 171 Ill. 2d at 301. Our supreme court observed that "legislation that affects *any* stage of the election process implicates the right to vote," (emphasis in original) (*id.* at 307), and that "the constitutional right to vote is implicated by legislation that gives some votes cast greater or lesser weight than others" (*id.* (citing *Fumarolo v. Chicago Board of Education*, 142 Ill. 54 (1990)). The supreme court found that Public Act 89-5 "establishe[d] a mechanism for *total* disregard of *all* votes cast by citizens in a particular election," and "voids the votes cast by citizens in a valid election and authorizes the Governor to select the candidates of his choice." (Emphases in original) *Tully*, 171 Ill. 2d at 307. Our supreme court concluded that Public Act 89-5 could not withstand strict scrutiny, concluding in part that, "Legislation that nullifies the votes cast in a valid election and removes the elected trustees from

office midterm is not necessary to or narrowly tailored to achieve the legislature's presumed goal" of advancing the State's compelling interest in education. *Id.* at 311-12.

¶ 24    In *East St. Louis*, a school district and its superintendent challenged section 1B-20 of the School District Financial Oversight Panel and Emergency Financial Assistance Law (Emergency Financial Assistance Law) (105 ILCS 5/1B-20 (West 1994)). Upon certification that a local school district was in financial difficulty, the Emergency Financial Assistance Law in part allowed the State Board of Education to convene a panel to approve or reject local school board contracts. *East St. Louis*, 178 Ill. 2d at 404. The panel also had the authority to remove locally elected school board members if they refused to comply with a valid order from the panel. *Id.* at 405. The school board voted to approve the renewal of the superintendent's contract, but the panel ordered the school district not to renew the contract. *Id.* When the school board members refused to comply, the panel removed the elected school board members. *Id.* The circuit court ruled that section 1B-20 of the Emergency Financial Assistance Law was unconstitutional because it "violated substantive and procedural due process and that it impinged on the right to vote." *Id.* at 406-07. Our supreme court reversed. The court rejected the superintendent's reliance on *Tully* that section 1B-20 unconstitutionally infringed on the right to vote because section 1B-20 was enacted before the current school board members were elected. *Id.* at 414-15.

¶ 25    Here, defendant reads *Tully* and *East St. Louis* too broadly when he asserts that those cases recognize a "right" to run for elective office that might be preserved or restored by section 5-5-5(a) of the Code of Corrections because neither case acknowledges such a right. Both of those cases considered whether legislation infringed on voters' fundamental right to vote by removing validly elected officials from office, and examined, in part, a validly elected official's right to maintain office once elected. *Tully* stands for the proposition that "post-hoc" legislation

9

that attempts to remove elected officials from office by changing an elective office to an appointive office infringes on the voters' fundamental and constitutionally protected suffrage rights. *East St. Louis* refused to extend the rationale in *Tully* to situations where the complained-of legislation was in effect at the time that the officials were elected. *East St. Louis* also acknowledged that, "The legislature has the discretion to formulate the character, function, and duties of school boards," (*East St. Louis*, 178 Ill. 2d at 413-14), and that "the powers of municipal corporations 'may be enlarged, diminished, modified or revoked *** at the pleasure of the legislature' " (*id.* at 414 (citing *People ex rel. Taylor v. Camargo School District*, 313 Ill. 321, 324 (1924)). Neither *Tully* nor *East St. Louis* addressed whether the legislature may properly limit an individual's eligibility for elective municipal office. Nor does either case stand for the proposition that there is a "right" to run for municipal office that is not lost by or is restored to convicted felons by operation of section 5-5-5(a) of the Code of Corrections.

¶ 26    Defendant's reliance on *United States v. McKinley*, 23 F.3d 181 (7th Cir. 1994), *United States v. Williams*, 128 F.3d 1128 (7th Cir. 1997), and *Gillaum*, 372 F.3d 848, is also misplaced. He reads those cases out of context, and none of those federal cases conclude that Illinois recognizes a "right" to run for elective municipal office that is neither lost by, nor is restored to, all persons with felony convictions. In *McKinley*, *Williams*, and *Gillaum*, the defendants had prior state felony convictions that they argued should not be considered for the purposes of either federal prosecution as a felon in possession of a firearm and ammunition, (*McKinley*, 23 F.3d at 183-84), or sentencing as an "armed career criminal," (*Williams*, 128 F.3d at 1134-35; *Gillaum*, 372 F.3d at 859-62). In each case, the court of appeals examined whether there were state laws that "substantially restored" the defendants' preconviction rights, or whether the state continued to withhold some preconviction rights, and examined the interplay between state laws and a

federal law that provided, "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter ***." 18 U.S.C. § 921(a)(20) (1994). *McKinley* concluded that Indiana law precluded a felon from holding elective office and used prior felony convictions for the purposes of state recidivist statutes, (*McKinley*, 23 F.3d at 183-84); *Williams* concluded that Missouri law prohibited convicted felons from holding the office of sheriff or serving as highway patrolmen, (*Williams*, 128 F.3d at 1135); and *Gillaum* concluded that Illinois law contained a prohibition on the possession of a firearm by a felon, (*Gillaum*, 372 F.3d at 861 (citing 735 ILCS 5/24-1.1 (West 2004)). The federal court of appeals therefore reasoned that, in each case, the defendants' civil rights were not substantially restored for the purposes of 18 U.S.C. § 921(a)(20).

¶ 27    Nothing in these federal decisions amounts to a holding that a convicted felon's restoration of civil rights under section 5-5-5(a) of the Code of Corrections prohibits the legislature from establishing qualifications for holding a municipal office. *Gillaum* acknowledged that in Illinois, "a criminal defendant's rights to vote and hold office are automatically restored to him at the completion of his prison sentence." 372 F.3d at 861 (citing 730 ILCS 5/5-5-5(b), (c) (West 2004)). *Gillaum* also noted that, "by virtue of his conviction, a criminal defendant loses no other civil rights, with the exception to hold licenses to engage in certain occupations and the right to hold public employment after conviction of certain election-related offenses." *Id.* (citing 730 ILCS 5/5-5-5(b) (West 2004)). But as the discussion above makes clear, *Gillaum* considered whether Illinois law substantially restored the criminal defendant's rights under Illinois law for the purpose of avoiding an enhanced sentence under 18 U.S.C. § 921(a)(20), not whether a convicted felon has the "right" to hold elective municipal

office. We find that here, the federal case law cited does not adequately support defendant's argument that there is a "civil right" to hold elective municipal office that is not lost by or is restored to a convicted felon by operation of section 5-5-5(a) of the Code of Corrections.

¶ 28    Furthermore, defendant does not advance any argument that section 3.1-10-5 of the Municipal Code is ambiguous such that we must construe section 3.1-10-5 of the Municipal Code *in pari materia* with section 5-5-5(a) of the Code of Corrections. See *Pappas*, 288 Ill. App. 3d at 790 (finding that section 3.1-10-5 of the Municipal Code is not ambiguous). We conclude, as we did in *Pappas*, that there is no conflict between section 5-5-5(a) of the Code of Corrections and section 3.1-10-5(b) of the Municipal Code. We note that our legislature has amended section 3.1-10-5 of the Municipal Code on eight occasions since our decision in *Pappas*, and it has not amended the language of section 3.1-10-5(b) to allow persons "convicted in any court located in the United States of any infamous crime, bribery, perjury, of other felony" to be eligible for elective municipal office. We conclude that the circuit court properly found that the plain language of section 3.1-10-5 of the Municipal Code controls whether defendant was ineligible to take the oath of office for the office of Mayor of the City of Markham.

¶ 29    In sum, we are not persuaded by defendant's arguments that our supreme court's decisions in *Tully* and *East St. Louis*, together with the decisions in *McKinley*, *Williams*, and *Gillaum*, establish that, by operation of section 5-5-5(a) of the Code of Corrections, a convicted felon's "right" to hold municipal elective office is not lost or is restored.

¶ 30                                    II. Constitutional Challenges

¶ 31    Defendant next contends that the Conviction Statutes, "as applied to [him] and those similarly situated [v]oters of the City of Markham," violates article III, sections 1, 3, and 4 of the Illinois Constitution. He contends that the Conviction Statutes violate voters' voting rights, and

violate the principles that elections must be free and equal and that laws governing voter registration and the conduct of elections must be general and uniform under article III, sections 1, 3, and 4 of the Illinois constitution (Ill. Const. 1970, art. III, §§ 1, 3, 4). He further argues that the Conviction Statutes, as applied to him, violate his rights under the first and fourteenth amendments to the United States Constitution, (U.S. Const. amends. I, XIV), as well as article I, sections 2 and 4 of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 4).

¶ 32    "An 'as-applied' challenge requires a party to show that the statute violates the constitution as the statute applies to him." *In re Deshawn G.*, 2015 IL App (1st) 143316, ¶ 59 (citing *People v. Brady*, 369 Ill. App. 3d 836, 847 (2007)). "Reviewing courts have a duty to construe a statute to preserve its constitutionality whenever reasonably possible." *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18 (citing *People v. Masterson*, 2011 IL 110072, ¶ 23). Statutes "are presumed constitutional, and the challenging party has the burden to prove the statute is unconstitutional." *Bartlow*, 2014 IL 115152, ¶ 18. The constitutionality of a statute is a question of law reviewed *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 22.

¶ 33                                A. The Right to Vote

¶ 34    First, defendant argues that voters of the City of Markham were given "significant, widespread, and nearly constant opportunity to scrutinize all candidates *** including [d]efendant's record." He argues that plaintiff's challenge to his ability to hold office "nullif[ies] the votes cast by the people of Markham," which affects their voting rights. He relies on *Tully* to argue that this case involves "the 'post-hoc' nullification of votes and disqualification of the duly elected Mayor of the City of Markham *** after the ballots have been cast." Defendant further

relies on *Tully* to assert that the Conviction Statutes operate to impair his and similarly situated voters' fundamental right to vote and that we must therefore apply strict scrutiny.

¶ 35    First, we reject defendant's contention that this case involves the disqualification of a "duly elected" municipal official. As discussed above, defendant's felony conviction of an infamous crime rendered him ineligible to hold municipal office, and his eligibility did not change simply because he received more votes than anyone else. Defendant cites no authority to support the proposition that receiving more votes than any other candidate somehow made him eligible to hold municipal office.

¶ 36    Furthermore, defendant's characterization of the circuit court's order as a "post-hoc" nullification of the voters' right to vote is incorrect. While it is true that plaintiff's complaint, and the circuit court's determination that defendant was ineligible to hold elective municipal office, occurred after the election—or "postelection"—the bases of defendant's ineligibility are the Conviction Statutes, which were in effect well before defendant decided to run for office and well before defendant pleaded guilty to felony mail fraud. *Tully*'s discussion of "post-hoc" nullification related to the Governor's attempt to remove elected officials through legislation that was enacted during the elected officials' terms. In other words, the legislation—not the removal of the official—was "post-hoc," and the legislation unconstitutionally impaired the voters' fundamental rights to vote. *Tully*, 171 Ill. 2d at 307 ("The vote cast by a citizen is not simply diluted, but is totally nullified by the statutory scheme."). But as our supreme court made clear in *East St. Louis*—which defendant fails to meaningfully acknowledge—the fundamental right to vote is not implicated when the legislative provisions relied on to remove an elected municipal official were in effect at the time the official took office. *East St. Louis*, 178 Ill. 2d at 414-15. The situation before us is more analogous to *East St. Louis* than it is to *Tully* because the

14

Conviction Statutes were in effect before and at the time of the April 4, 2017, consolidated election and operate to bar convicted felons from holding municipal office. Therefore, defendant's "as applied" challenge to the Conviction Statutes on the basis that the statutes deprived voters of their fundamental right to vote fails.

¶ 37                                    B. Uniformity of Election Laws

¶ 38    Defendant next argues that laws that "apply to invalidate and quash the election of a mayoral candidate but would have no effect on a gubernatorial or state senate election" violate article III, section 4 of the Illinois constitution, which provides:

> "The General Assembly by law shall define permanent residence for voting purposes, insure secrecy of voting and the integrity of the election process, and facilitate registration and voting by all qualified persons. Laws governing voter registration and conduct of elections shall be general and uniform." Ill. Const. 1970, art. III, § 4.

Defendant, however, fails to cite to any authority to support his contention that statutes regulating eligibility for municipal office somehow affect the uniformity of how elections are conducted. Defendant has therefore forfeited this argument and it warrants no further consideration. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017) (an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are waived ***.").

¶ 39                                    C. Free and Equal Elections

¶ 40    Defendant does not advance any argument in support of his nominal contention that the Conviction Statutes violate article III, section 3 of the Illinois Constitution's guarantee that "All elections shall be free and equal." Ill. Const. 1970, art. III, § 3. He has therefore forfeited any such argument. Ill. S. Ct. R. 341(h)(7).

¶ 41                                    D. Equal Protection

¶ 42    Defendant next argues the Conviction Statutes violate his and the similarly situated voters of Markham's rights by imposing different restrictions on constitutional officers than on municipal officers in violation of the equal protection provisions of the fourteenth amendment under the federal constitution (U.S. Const. amend. XIV, § 1), and article I, section 2 of the Illinois constitution (Ill. Const. 1970, art. I, § 2). Defendant relies on our supreme court's statement in *Tully* that "legislation that affects *any* stage of the election process implicates the right to vote." (Emphasis in original.) *Tully*, 171 Ill. 2d at 307.

¶ 43    In *People v. Hofer*, 363 Ill. App. 3d 719 (2006), we considered and rejected a similar equal protection challenge. There, the defendant was elected to the office of president of the Board of Trustees of the Village of Sorrento. *Id.* at 720. The State filed a *quo warranto* complaint seeking the defendant's removal pursuant to section 3.1-10-5 of the Municipal Code based on his prior felony conviction for driving while license revoked. *Id.* The defendant argued that section 3.1-10-5 violated his equal protection rights and the circuit court granted summary judgment in favor of the State. *Id.* On appeal, we examined the defendant's equal protection challenge under the rational basis standard because

> "the right to run for a statutorily created office and the right to serve in that office
>
> have not been found to be absolute or fundamental rights, [citations], and because
>
> this case does not fall within the types of cases where the challenged classification
>
> imposes burdens on new political parties or where ballot access is dependent on a
>
> person's economic means." *Id.* at 722.

We found that the equal protection provisions of the federal and state constitutions, as well as the Conviction Statutes, "were established to ensure public confidence in the honesty and integrity of

those serving in state and local offices." *Id.* at 723 (citing *People ex rel. Ryan*, 64 Ill. App. 3d at 811-12). We observed "that the opportunities and the means to scrutinize candidates for municipal offices and to oversee the activities of those elected are significantly less than the opportunities for scrutiny and oversight of those who run for and serve in constitutional offices." *Id.* at 724. Elected officials make important fiscal and policy decisions impacting the residents of a municipality. *Id.* We concluded that "the provision requiring a convicted felon who wants to run for a statutorily created office to establish to the Governor's[2] satisfaction that he has rehabilitated himself and is worthy of the public trust is neither arbitrary nor irrational." *Id.*

¶ 44    In *Parker v. Lyons*, 757 F.3d 701 (7th Cir. 2014), the federal court of appeals addressed a similar equal protection challenge to section 29-15 of the Election Code. There, the Peoria State's Attorney filed a *quo warranto* complaint in state court to block Parker's candidacy for a seat on a local school board. *Id.* at 704. The circuit court entered judgment in favor of the State and Parker appealed. *Id.* at 705. While his appeal was pending in state court, Parker filed suit in federal district court, asserting in part that the State's *quo warranto* action violated his equal protection rights. *Id.* The district court dismissed all of Parker's claims and he appealed. *Id.* The Seventh Circuit Court of Appeals concluded that it had jurisdiction over Parker's claims, but rejected his facial challenge to section 29-15 of the Election Code on equal protection grounds, observing that the right to run for or hold public office is neither a fundamental right nor are convicted felons a suspect class. *Id.* at 707. The federal court of appeals cited *Hofer* in support of its finding that Illinois has an interest in "ensuring public confidence in the honesty and integrity of those serving in state and local offices." *Id.* (citing *Hofer*, 363 Ill. App. 3d at 723).

---

[2]The defendant in *People ex rel. Ryan* had a state felony conviction, and the Governor of Illinois has the power to pardon persons convicted of state crimes. Here, defendant has a federal felony conviction, and only the President of the United States has the power to pardon persons convicted of federal crimes. See U.S. Const., art. II, § 3.

Furthermore, even assuming that heightened scrutiny applied to Parker's equal protection claim, it would still fail because the Supreme Court had held that states may deprive convicted felons of their fundamental right to vote. *Id.* (citing *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), and *Crawford v. Marion County Election Board*, 553 U.S. 181, 210 (2008)).

¶ 45 Here, defendant contends that *Hofer* and *Parker* both involved facial challenges as opposed to an "as applied" challenge, and that the State's proffered government interests in *Hofer* are not present here. He argues that his felony conviction was not a secret, that he was heavily attacked by his opponents in the election, and that the voters of Markham had ample opportunity to scrutinize his record. In effect, he argues that local voters can overcome established law and elect otherwise ineligible candidates to a municipal office, a novel but unsupported contention. But even accepting defendant's contention that the State's legitimate interests here were somewhat diminished where the voters of Markham were fully apprised of defendant's felony conviction, he offers nothing to counter *Hofer*'s finding that municipal officers are subject to less oversight while in office than constitutional officers. The State still has an important interest in protecting the integrity of elective municipal offices and may do so by enacting legislation that prohibits convicted felons from holding such offices.

¶ 46 We also find instructive our supreme court's decisions in *Bryant v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 473 (2007), and *Delgado v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 481 (2007). In those cases, candidates with felony convictions filed nomination petitions for election as aldermen in Chicago. *Bryant*, 224 Ill. 2d at 474; *Delgado*, 224 Ill. 2d at 482. Objectors challenged the nomination petitions, arguing that section 3.1-10-5 of the Municipal Code barred the candidates from holding municipal office. *Bryant*, 224 Ill. 2d at 475; *Delgado*, 224 Ill. 2d at 484. The electoral board declared section 3.1-

10-5 unconstitutional, (*Bryant*, 224 Ill. 2d at 475; *Delgado*, 224 Ill. 2d at 484), and the Cook County circuit court affirmed (*Bryant*, 224 Ill. 2d at 473; *Delgado*, 224 Ill. 2d at 481). Objectors filed direct appeals to the supreme court. The supreme court observed that the electoral board had no authority to declare section 3.1-10-5 unconstitutional and explained that, on that basis, the circuit court should have declared the electoral board decision to be void. *Bryant*, 224 Ill. 2d at 476-77; *Delgado*, 224 Ill. 2d at 485-86. Additionally, the supreme court observed that the circuit court was bound to follow the decision in *Hofer*, which had rejected similar equal protection challenges to section 3.1-10-5, and therefore the circuit court had no proper basis for finding equal protection violations. *Bryant*, 224 Ill. 2d at 478-79; *Delgado*, 224 Ill. 2d at 487-88. The supreme court dismissed the direct appeals and entered supervisory orders directing the circuit court to vacate the electoral board's decisions and declare the candidates ineligible for municipal office under section 3.1-10-5 of the Municipal Code. *Bryant*, 224 Ill. 2d at 479-80; *Delgado*, 224 Ill. 2d at 489. Our supreme court's recognition of *Hofer* lends additional credibility to *Hofer*'s finding that the State has an important interest in protecting the integrity of elective municipal offices by declaring convicted felons ineligible to hold elective municipal office.

¶ 47    Here, we find that defendant's equal protection claims must fail because there is a rational relationship between section 29-15 of the Election Code and the State's interest in protecting the integrity of elective municipal offices.

¶ 48                                        E. Free Speech

¶ 49    Finally, defendant contends that the Conviction Statutes violate his and the voters of Markham's rights to free speech under the first amendment to the federal constitution and article I, section 4 of the Illinois Constitution. He argues that the Conviction Statues operate "to deny [him] ballot access and his *** rights to freely associate with potential voters *** for the

19

purposes of advancing ideas and political expression." Defendant characterizes the application of the Conviction Statutes as an " 'after the fact' attempt to freeze [his] ability to participate in municipal politics." Defendant relies primarily on *Lee v. Keith*, 463 F.3d 763 (7th Cir. 2006), *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), and *Dempsey v. Johnson*, 2016 IL App (1st) 153377, in support of his arguments.

¶ 50    Defendant's free speech arguments are poorly developed and he cites no authority to support his contention that the Conviction Statutes act as a "hurdle" to his exercise of his right to engage in political association. Instead, he relies on cases involving procedural requirements for getting on the ballot. See *Lee*, 463 F.3d at 772 (finding that the combined effect of filing deadlines and signature requirements for independent General Assembly candidates severely burdened the candidates' rights to access the ballot); see also *Krislov*, 226 F.3d at 862 (finding that an Illinois law requiring signature gatherers to be registered voters and to be registered in the political subdivision violated the first amendment because it made it more difficult for the candidates to disseminate their political views, associate with prospective solicitors for the purpose of eliciting political change, to gain access to the ballot, and to utilize endorsements of their candidacy).

¶ 51    Here, defendant's challenge to the Conviction Statutes bears no resemblance to the ballot access barriers addressed in *Lee* and *Krislov*. Those cases involve state statutes regulating the manner in which a candidate seeks a place on the ballot, but did not involve an examination of whether a state law affecting a candidate's eligibility to hold an elective municipal office implicates the right to free association.

¶ 52    Defendant's reliance on *Dempsey* is similarly misplaced. He relies on *Dempsey* for the principle that signature gathering, associating as an independent candidate, and engaging in

political activity by running for public office are constitutionally protected activities. *Dempsey*, 2016 IL App (1st) 153377, ¶ 19. But *Dempsey* had nothing to do with candidate eligibility, and instead involved a first amendment retaliation claim. There, the plaintiff was an independent candidate for the office of the village president, and alleged that the defendant village clerk assisted the plaintiff's opponent in formulating a challenge to the plaintiff's candidacy. *Id.* ¶¶ 2-3. That challenge came before an electoral board—on which the defendant sat—and the plaintiff's name was removed from the ballot. *Id.* ¶ 4. The circuit court, however, reversed the electoral board and reinstated the plaintiff's name to the ballot. *Id.* ¶ 5. The night before the election, the defendant allegedly disseminated a prerecorded message—in which she identified herself as the village clerk—to all of the registered voters in the village, falsely stating that the plaintiff was not a legitimate candidate, that she had been officially removed from the ballot, and that any votes cast in her favor would be a lost vote. *Id.* ¶ 6. The plaintiff lost the election and sued the defendant asserting that the defendant deprived the plaintiff of her right to freedom of association by retaliating against the plaintiff due to her political affiliation. *Id.* ¶¶ 6-7. We reversed the circuit court's section 2-615 dismissal of the plaintiff's retaliation claim, finding in part that the plaintiff had sufficiently alleged that she was engaged in freedom of association activities by associating as an independent candidate and running for public office. *Id.* ¶¶ 18-19.

¶ 53     Here, defendant makes no effort to analogize his situation to *Lee*, *Krislov*, or *Dempsey*. He simply advances our statement in *Dempsey* that signature gathering, associating as an independent candidate, and engaging in political activity by running for public office are constitutionally protected activities, and he relies on federal cases involving procedural ballot access issues to make the sweeping claim that barring convicted felons from holding municipal office impairs their right to free association. This undeveloped argument does not persuade us

21

that defendant has met his burden to clearly show that the application of the Conviction Statutes "as applied" to him unconstitutionally impairs his right to freely associate. See *People v. Wilson*, 214 Ill. 2d 394, 398-99 (2005) ("All statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation."). We therefore reject defendant's argument that the Conviction Statutes infringe on his constitutional right to free association.

¶ 54                                    CONCLUSION

¶ 55    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 56    Affirmed.